STATE of Missouri, ex rel. DEERE & COMPANY, Respondent,

v.

The MISSOURI STATE HIGHWAY AND TRANSPORTATION COMMISSION, Appellant,

and

Richard A. Hanson, Defendant–Respondent.

No. WD 48534.

Missouri Court of Appeals, Western District.

April 19, 1994.

Dan Pritchard, Gregory W. Schroeder, Rich Tiemeyer, Jefferson City, for Missouri Highway and Transp. Com'n, appellant.

Daniel M. Dibble, John E. Tyler III, Alok Ahuja, Kansas City, for Deere & Co.

Mark Weaver, Jefferson City, for Richard A. Hanson, defendant and respondent.

Before TURNAGE, C.J. and KENNEDY and HANNA, JJ.

TURNAGE, Chief Judge.

Deere and Company filed suit seeking injunction and mandamus against the State Highway and Transportation Commission and for declaratory judgment against the Commission and Richard A. Hanson, Commissioner of the Office of Administration. The petition for declaratory judgment sought the proper interpretation of § 34.350–359, RSMo 1987 Cum.Supp., known as the Domestic Product Procurement Act. The court entered judgment on the declaratory judgment count adverse to the Commission and certified that there was no just cause for delay pursuant to Rule 74.01(b). The Commission appealed and contends that the court erroneously interpreted the statute. Reversed and remanded.

The parties filed a stipulation of facts upon which the case was submitted. Deere does business in the State of Missouri as John Deere Company and is a manufacturer and seller of agricultural and construction implements and lawn and garden products. The Commission is a public agency within the definition of § 34.350.2(1), The Commissioner of the Office of Administration is the head of the department of which the Division of Purchasing and Materials Management is a part. The Division is a public agency within the meaning of § 34.350.2(1). In November 1992 the Commission issued invitations to bid for the purchase of tractors described in the invitation. The invitation to bid directed the bidders' attention to the Domestic Product Procurement Act. Deere submitted a bid in response to the invitation in which Deere proposed to furnish tractors manufactured, assembled or produced in the United States. When the bids were opened, Deere's bid was the only one certifying that the tractors described in its bid were manufactured, assembled or produced in the United States. Another bidder, Ford New Holland, Inc., was the low bidder but it certified that its tractors were not manufactured, assembled or produced in the United States. Accepting the Deere bid would not have increased the cost to the Commission by more than ten percent.

The Commission has issued a purchase order to Ford because it found that § 34.353 did not require a preference to be given to the Deere bid because Deere was the only United States manufacturer of the tractors described in the invitation to bid.

In 1992 the Division of Purchasing issued invitations to bid for the purchase of tractors. Deere submitted a bid and certified that the tractors described in its bid were not manufactured, assembled or produced in the United States. Another bidder, Kubota Tractor Corp., certified that its tractors were manufactured, assembled or produced in the United States. The Division indicated it would accept the bid of Kubota because Kubota was entitled to the preference of § 34.353.2 because the Division construes that section to mandate a preference for domestic products when any one or more bidder certifies on

their bids that the goods or products listed on the bid were manufactured, assembled or produced in the United States, regardless of the number of manufacturers who produce such goods or products in the United States.

It is not surprising that Deere filed this action for declaratory judgment in view of the contradictory interpretation which two state agencies placed on § 34.353.

The court entered a declaratory judgment in which it found that the reference in § 34.353.2 to "only one line of a particular good or product is manufactured, assembled or produced in the United States" was ambiguous. The court adopted the interpretation of the Division and held that the act does not preclude preference being given to a bidder in a single item bid even though that bidder is the only one to certify that its goods or products are manufactured, assembled or produced in the United States.

The Commission appeals and contends that its interpretation is correct. Neither the Office of Administration, nor the Division of Purchasing has filed a brief. Deere contends that the trial court was correct.

Section 34.353.1, so far as applicable to this case provides:

1. Each contract for the purchase or lease of manufactured goods or commodities by any public agency, and each contract made by a public agency for construction, alteration, repair, or maintenance of any public works shall contain a provision that any manufactured goods or commodities used or supplied in the performance of that contract or any subcontract thereto shall be manufactured, assembled or produced in the United States.

2. This section shall not apply where the purchase, lease, or contract involves an expenditure of less than one thousand dollars. This section shall not apply when only one line of a particular good or product is manufactured, assembled or produced in the United States.

3. This section shall not apply where the executive head of the public agency certifies in writing that:

(1) The specified products are not manufactured, assembled or produced in the United States in sufficient quantities to meet the agency's requirements or cannot be manufactured, assembled or produced in the United States within the necessary time in sufficient quantities to meet the agency's requirements;

(2) Obtaining the specified products manufactured, assembled or produced in the United States would increase the cost of the contract by more than ten percent;

In *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31[3–5] (Mo. banc 1988), the Court stated, "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning."

Deere contends that the statute is ambiguous as found by the trial court. *Wolff* stated the test of whether or not a statute is ambiguous as follows, "In determining whether the language is clear and unambiguous, the standard is whether the statute's terms are plain and clear to one of ordinary intelligence." *Id.*

■ The parties focus on the language in § 34.353.2 that "This section shall not apply when only one line of a particular good or product is manufactured, assembled or produced in the United States." *Wolff* requires this court to determine whether the statute's terms are plain and clear to one of ordinary intelligence when the words used in the statute are given their plain and ordinary meaning. The only question can be the meaning of "one line of a particular good or product." Webster's Ninth New Collegiate Dictionary (1991) at pg. 694 defines "line" as used in connection with merchandise to mean "merchandise or services of the same general class for sale or regularly available." Webster's Third New International Dictionary (1971) at pg. 1413 defines "merchandise" to mean commodities or goods that are bought and sold. Thus, the ordinary meaning of "line of a particular good or product" is goods or products of the same general class. The one line language refers to whether or not there is more than one item manufactured, assembled or produced in the U.S. of

the same general class as the item for which bids are sought.

In this case the Commission sought bids for a tractor with a diesel engine with a 201 cubic inch displacement and a minimum of 50 H.P. and certain other specifications. The bid was not limited to a particular make, model or manufacturer. Under the statute the question is whether or not there is more than one make or model of tractor of the general class as that for which bids were sought which would meet the specifications. If the answer is in the affirmative, bidders who certify their product was manufactured, assembled or produced in the U.S. would meet the first criteria for the preference. If the answer is in the negative, there would be no preference involved.

■ Deere contends the fact that two state agencies have interpreted the statute in different ways proves that the statute is ambiguous. *Wolff* held that "the plain and unambiguous language of a statute cannot be made ambiguous by administrative interpretation and thereby given a meaning which is different from that expressed in a statute's clear and unambiguous language." *Id.* Here, the language in the statute is clear and unambiguous and there is no reason for interpretation.

The court found that the Division interprets the part of the statute in question to mean that a preference for American made goods applies only in the context of multi-item bid packages so that an American manufacturer is not entitled to a preference if only one of the items (or lines) of a multi-item bid is manufactured in the U.S. That interpretation is totally unjustified. The statute makes no reference to single item or multi-item bids. It is concerned with only one question. That is whether the good or product advertised for bid is part of a general class of goods and products which is manufactured, assembled or produced in the U.S.

■ It is apparent that neither the Commission nor the Division has correctly read the statute. The bid which Deere submitted to the Commission was rejected by the Commission because the Commission felt that Deere was the only manufacturer in the U.S.

of the tractors described in the invitation to bid because Deere was the only bidder who certified that its tractors were manufactured in the United States. The Commission could not draw that conclusion solely on the basis that Deere was the only bidder who certified its tractors were manufactured in the United States.

The question becomes as to how it is determined if there is more than one line of goods or products. The answer lies in § 34.353.3. There the executive head of the agency is given responsibility to certify that the specified products are not manufactured in this country in sufficient quantities to meet the agency's requirements or cannot be produced in this country within the necessary time in sufficient quantities to meet the agency's requirements. Reading § 34.353.2 together with § 34.353.3 reveals a clear legislative intent that the executive head of the public agency has the responsibility to determine if there is only one line of the goods or products manufactured, assembled or produced in the U.S. The fact that only one bidder certifies that its goods or products are produced in the United States does not substitute for a certification by the executive head of the department that there is only one line of the item put out for bid that is manufactured, assembled or produced in the U.S.

In this case there was no certification by the executive head of the Commission that there is only one line of tractors manufactured, assembled or produced in the U.S. which meets the specifications. Under the facts here, Deere was entitled to the preference because there was no finding that only one line of the tractors sought was manufactured, produced or assembled in the U.S.

In the invitation to bids issued by the Division, Kubota certified that its tractors were manufactured, assembled or produced in the United States and Deere certified that its tractors were not so produced. Absent a certification by the executive head of the Division that there was only one line of tractors produced in the U.S. meeting the specifications, Kubota was entitled to the preference. The Division properly accepted the Kubota bid.

The judgment is reversed and this cause is remanded with directions to enter a declaratory judgment declaring that:

1. Section 34.353.2 is not ambiguous.

2. The phrase "only one line of a particular good or product is manufactured, assembled or produced in the United States" means that there are no other items in the same general class as the item for which bids are sought which are manufactured, assembled or produced in the United States.

3. The preference of § 34.353.3 is to be given to goods or products manufactured, assembled or produced in the United States without reference to the number of bidders or the number of items upon which bids are to be submitted.

4. In a multiple item bid the preference is to be determined upon each item individually.

5. The determination of whether or not there is only one line of products or goods manufactured, assembled or produced in the United States is to be made by the executive head of the public agency. If the executive head does not certify that there is only one line, it is to be concluded that there is more than one line manufactured, assembled or produced in the U.S.

6. Preference for goods or products manufactured, assembled or produced in the United States does not apply when the purchase, lease or contract involves an expenditure of less than $1,000 or the cost of obtaining products manufactured, assembled or produced in the United States would increase the cost of the contract by more than ten percent.

7. That under the stipulated facts in this case, Deere was entitled to the preference for goods or products manufactured, assembled or produced in the United States contained in § 34.353 in its bid submitted in response to the invitation to bid issued by the Highway and Transportation Commission.

8. That under the stipulated facts Deere was not entitled to the preference contained in § 34.353 in its bid submitted in response to the invitations to bid issued by the Division of Purchasing.

One-half of the costs on this appeal are assessed against Deere.

All concur.